UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SPECIALIZED TRANSPORTATION
OF TAMPA BAY, INC.,**

    **Plaintiff,**

v.                                                   Case No.  8:06-CV-421-T-30EAJ

**NESTLE WATERS NORTH AMERICA,
INC.,**

    **Defendant.**
_____/

# ORDER

THIS CAUSE comes before the Court upon cross motions for partial summary judgment on Count V (Dkts. 47 and 53) and responses in opposition thereto (Dkts. 54 and 58), Defendant's Request for Oral Argument of Motion for Partial Summary Judgment (Dkt. 59), and Defendant's Motion for Leave to File a Reply Memorandum of Law in Support of its Motion for Partial Summary Judgment (Dkt. 60) and Plaintiff's opposition thereto (Dkt. 61). This case involves a dispute over the parties' contractual rights and obligations regarding delivery services Plaintiff provided for Defendant and Plaintiff's assertion that Defendant breached an oral contract with Plaintiff pursuant to which Plaintiff reconfigured its fleet of vehicles to accommodate Defendant's shipping needs ("Doubles Program") (Dkt. 2 at 2-6). Having considered the motions and responses thereto and being otherwise advised of the premises, the Court concludes that Defendant is entitled to judgment as a matter of law on

Count V of the complaint, see Fed. R. Civ. P. 56(c) (2007).

**Motion for Summary Judgment Standard**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

## **Factual Background**[1]

On November 29, 2001, Plaintiff entered into a written agreement to transport bottled water from the Zephyrhills Spring Water ("ZSW") facility located in Zephyrhills, Florida, to ZSW customers in Florida. Defendant, as successor in interest to Perrier, is ZSW's parent company. Personnel at the ZSW facility ("ZSWF") released a Request for Proposals ("RFP") on December 7, 2001, seeking "a transportation logistics provider for a dedicated fleet based at its [ZSWF] to improve logistics cost and customer service while increasing efficiency throughout its logistics network" (Dkt. 47, Ex. D). Responding to the RFP, Plaintiff presented a proposal for both single trailer and double trailer transport.

The RFP identified Joel Adams, ZSWF's Regional Manager - Distribution, as the point of contact for any questions regarding the content of the RFP. Acting in his capacity as Plaintiff's employee, Charles Carver entered into discussions with Adams regarding the proposed "doubles" program. At Adams's request, Plaintiff produced a prototype of the tandem trailer it proposed to use if awarded a contract under the RFP. According to Adams, when he consulted with his supervisor Mark Roberts, then Regional District Manager for Nestle Waters, regarding Plaintiff's proposal to utilize double trailers, Roberts encouraged him to "enter into a pilot program" with Plaintiff (Dkt. 47, Ex. F at 11).

During the pilot program, Plaintiff purchased equipment necessary to modify its tractors and trailers, completed the equipment modifications, obtained the certifications from the Florida Department of Transportation necessary to operate doubles on highways within

---

[1]The facts are taken in the light most favorable to Plaintiff for purposes of this discussion only.

the state, and provided training for its drivers to enable them to become licensed in the operation of its newly modified fleet. When Plaintiff submitted its proposal for the Doubles Program to ZSW, it estimated that it would incur $585,000.00 in start-up costs (Dkt. 47, Ex. F, Attach., Schedule A). When the pilot program proved successful, Adams authorized Plaintiff to start making "runs," promising that if Defendant failed to sign a three-year contract for Plaintiff's services, Defendant "would make [Plaintiff] whole on those . . . start-up costs" (Dkt. 47, Ex. F at 13).

On or about June 26, 2002, see Dkt. 47 at 7, Plaintiff "prepared a written document as the agreement and submitted the document to Defendant for approval" (Dkt. 2 ¶ 30). The parties' negotiations failed, and a written agreement regarding the Doubles Program was never executed.

Plaintiff delivered water throughout Florida for Defendant from 2001 through May, 2003, when a dispute arose between the parties regarding accounts receivables unrelated to the Doubles Program (Dkt. 2 ¶ 8). At that time, Defendant, acting in accord with the November 29, 2001 agreement, terminated Plaintiff's services.

Plaintiff filed its complaint in the Thirteenth Judicial Circuit Court, Hillsborough County, Florida, on January 31, 2006 (Dkt. 1, Ex. 1). In its complaint, Plaintiff alleges that Defendant failed to compensate it for all the delivery services Plaintiff provided (Counts I, II, and IV); breached an oral agreement by failing to return 40 of Plaintiff's trailers to its facility in Tampa, Florida, between April 2002 through November 2002 (Count III); and breached an oral agreement under which Plaintiff purchased dual trailer equipment to

facilitate delivery of Defendant's products by terminating the Doubles Program and refusing to reimburse Plaintiff for its start-up costs (Count V). Plaintiff seeks damages, prejudgment interests, and costs ( Dkt. 2).

Defendant removed the case to federal court pursuant to the Court's diversity jurisdiction over this matter under 28 U.S.C. §§ 1332 and 1441(a). Plaintiff is a citizen of Florida, with a business address in Hillsborough County, Florida. Defendant, a Delaware corporation with its principal place of business in Greenwich, Connecticut, is authorized to do business in Florida and maintains offices in Hillsborough County, Florida. The amount in controversy exceeds the jurisdictional limit of $75,000, exclusive of interests and costs, established by 28 U.S.C. §1332(a).

Now before the Court are the parties' cross motions for partial summary judgment on Count V.  For reasons set forth below, the Court concludes that there is no genuine issue as to any material fact, and Defendant is entitled to judgment as a matter of law.

**Discussion**

In this cause of action, the Court's jurisdiction is based upon diversity, see 28 U.S.C. § 1332, and the case arises under Florida law. In diversity cases arising under Florida law, a federal court is bound by the law articulated by the Florida Supreme Court. See Shapiro v. Associated Int'l Ins. Co., 899 F.2d 1116, 1118 (11th Cir. 1990).  If the Florida Supreme Court has not spoken on an issue, Florida District Court of Appeals decisions control absent persuasive indication that the Florida Supreme Court would rule otherwise. See Blanchard v. State Farm Mut. Auto. Ins. Co., 903 F.2d 1398, 1399 (11th Cir. 1990).

Plaintiff and Defendant move for summary judgment on Count V of the complaint. Without admitting the existence of any agreement with Plaintiff other than the November 29, 2001 signed Letter Agreement for Trucking Services, Defendant moves for partial summary judgment dismissing Count V of the complaint on the purely legal issue of the preclusive effect of Florida's Statute of Frauds ("SOF") upon Plaintiff's claim of breach of an oral contract. See Fla. Stat. § 725.01 (barring actions brought upon an oral agreement "not to be performed within the space of 1 year from the making thereof" in the absence of a writing signed by the party to be charged with its enforcement).

In the complaint, Plaintiff alleges as follows:

27. Plaintiff is in the business of providing transportation services for consideration by shipping in its own trailers pulled by tractors driven by agents and independent contractors under contract with Plaintiff. Plaintiff was requested by Defendant to develop a prototype whereby two (2) trailers could be pulled by one tractor using two (2) 48 foot trailers owned by Plaintiff.

28. At all times material to this Complaint, Plaintiff provided Defendant the prototype. Defendant approved the prototype and entered into an agreement whereby Plaintiff was to modify its 48 foot trailers to accommodate transporting dual trailers with one (1) tractor, saving Defendant 11% of the overall costs on southbound loads. Pursuant to the agreement, Plaintiff was to also purchase materials and take all other actions necessary, including but not limited to obtaining special permits to use the dual trailers on the Florida Turnpike.

29. The agreement was for a term of three (3) years with an option to renew. Plaintiff and Defendant agreed to the three (3) year term and that Plaintiff was able to recapture its initial start-up costs for the materials, modification and other acts concerning the use of dual trailers during the three (3) year term.

30. Plaintiff prepared a written document as the agreement and submitted the document to Defendant for approval. Defendant authorized the immediate commencement of the work concerning the use of the dual trailers and entered

>    into the agreement as stated in the written document. *Defendant indicated that it would sign the written document later*. Defendant specifically stated and agreed that it was bound by the terms of the document and that Plaintiff was to start work immediately.
>
> 31. Defendant breached its agreement with Plaintiff by terminating, without proper cause, the agreement before the end of the terms of the agreement.

Dkt. 2 at 5-6 (emphasis added).

Under Florida law, "[n]o action shall be brought . . . whereby to charge the defendant . . . upon any agreement that is not to be performed within the space of one year from the making thereof, . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized." See Fla. Stat. § 725.01 (2007). See Yates v. Ball, 181 So. 341, 344 (1938); see also Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290 (11th Cir. 1998); Dwight v. Tobin, 947 F.2d 455 (11th Cir. 1991); All Brand Importers, Inc. v. Tampa Crown Distrib., 864 F.2d 748, 750 (11th Cir. 1989).

For the SOF to make an agreement unenforceable, "it must be apparent that it was the understanding of the parties that [the agreement] was not to be performed within a year from the time it was made." Yates v. Ball, 181 So. at 344. Designed "to prevent persons from being enmeshed in and harassed by claimed oral promises made in the course of negotiations not ending in contracts reduced to writing," Cohen v. Pullman Co., 243 F.2d 725, 729 (5th Cir. 1957), "[t]he statute of frauds grew out of a purpose to intercept the frequency and

success of actions based on nothing more than loose verbal statements or mere innuendos." Yates v. Ball, 181 So. at 344. The Florida Supreme Court has cautioned that "[t]he statute should be strictly construed to prevent the fraud it was designed to correct, and so long as it can be made to effectuate this purpose, courts should be reluctant to take cases from its protection." Id.

The evidence before the Court shows beyond dispute that the Doubles Program, contemplated to run for a term of three years, was never memorialized in a writing that was signed by Defendant. Thus, the agreement comes within Florida's SOF.

Plaintiff argues that the SOF defense fails because the allegations in the complaint support finding that Defendant either waived or is equitably estopped from asserting the SOF defense. Specifically, Plaintiff contends that because the complaint alleges that it performed its part of the parties' oral agreement, Defendant has waived or is equitably estopped from asserting an SOF defense (Dkt. 47 at 12). In support of its assertion that "Florida law has always recognized that a party can be estopped from asserting the statute of frauds as a defense to an action based upon an oral agreement," Plaintiff cites the following Florida District Court of Appeals decisions: Broward County v. Conner, 660 So. 2d 288, 290 (Fla. 4th DCA 1995) (specific performance); Goldman v. Citicorp Savings of Florida, 552 So. 2d 1124, 1125 (Fla. 3d DCA 1989) (specific performance); United of Omaha Life Ins. Co. v. Nob Hill Associates, 450 So. 2d 536, 539 (Fla. 3d DCA 1984) (oral modification to written contract); First Realty Inv. Corp. v. Gallaher, 345 So. 2d 1088, 1090 (Fla. 3d DCA 1977) (oral employment contract for a bonus); Gleason v. Leadership Housing, Inc., 327 So. 2d

101, 104 (Fla. 4th DCA 1976) (specific performance of land contract); Besco Elec. Supply Co. v. Moses, 226 So.2d 5, 6 (Fla. 1st DCA 1969) (lease agreement); Manas v. Southern Diversified Industries, Inc., 193 So. 2d 480, 481 (Fla. 3d DCA 1967) (oral employment agreement); Rowland v. Ewell, 174 So. 2d 78, 80 (Fla. 2d DCA 1975) (oral employment agreement).

Relying on the above cited cases, Plaintiff contends that "[t]he 'mandate' in Florida is not . . . against the utilization of estoppel to defeat a statute of frauds defense. Instead, it appears that the mandate is largely in favor of estoppel being available" (Dkt. 58 at 14). This argument fails.

As set out in Tanenbaum v. Biscayne Osteopathic Hospital, Inc., the Florida Supreme Court has declined to "adopt by judicial action the doctrine of promissory estoppel as a sort of counteraction to the legislatively created Statute of Frauds." 190 So.2d 777, 779 (Fla. 1966). See also Eclipse Medical, Inc. V. American Hydro-Surgical, 262 F.Supp. 2d 1334, 1352 (S.D. Fla. 1999). As stated above, this Court is bound by the law articulated by the Florida Supreme Court; lower court decisions control only in the absence of persuasive indication that the Florida Supreme Court would rule otherwise, which is not the situation here. Plaintiff fails to provide any basis for the Court to conclude that the Tanenbaum decision should not be considered controlling on this issue, and there is no indication that the Florida Supreme Court would abandon that analysis were it presented with the facts of this case.

Plaintiff also cites Fla. Stat. § 672.201(3)[2] in support of its argument that the Court should reject Defendant's SOF argument. Florida has two statutes of fraud, the General Statute of Frauds, codified at § 725.01, and the Sale of Goods Statute of Frauds, codified at Fla. Stat. § 672.201(3) (explicitly recognizing waiver and estoppel concepts in Florida's sale of goods SOF). Pursuant to § 672.201, any agreement for the *sale of goods* for more than $500 must be in writing to be enforceable. Here, Plaintiff seeks enforcement of an alleged agreement that is exclusively for services, not a contract for the sale of goods, see Rozema v. Wilson, 419 So.2d 1139, 1140-41 (Fla. 1st DCA 1983), or a mixed contract for the sale of goods and services, see BMC Industries, Inc., v. Barth Industries, Inc., 160 F.3d 1322, 1329-30 (11th Cir. 1998). Thus, Plaintiff's reliance on the exception to the SOF set out in Fla. Stat. § 672.201 is unavailing to its cause.

The Court likewise rejects Plaintiff's contention that the doctrine of part performance precludes application of the SOF. Under Florida law, the doctrine of part performance does not apply to actions "for the recovery of damages for alleged breach of an oral contract" that

---

[2]Titled "Formal Requirements; statute of frauds," § 672.201 provides, in pertinent part, that:

(1) Except as otherwise provided in this section *a contract for the sale of goods* for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. . . .

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable: (a) If the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; . . . .

Fla. Stat. § 672.201 (2007).

is, as here, within the operation of the SOF. Elsberry v. Sexton, 54 So. 592, 593 (Fla. 1911); see also Dwight v. Tobin, 947 F.2d 455, 459 (11th Cir. 1991); LynkUs Communications, Inc. v. WebMD Corp., 965 So.2d 1161, 1166 (Fla. 2d DCA 2007); Winters v. Alanco, Inc., 435 So.2d 326, 331 (Fla. 2d DCA 1983); Wharfside at Boca Pointe, Inc. v. Superior Bank, 741 So.2d 542, 545 (Fla. 4th DCA 1999); Collier v. Brooks, 632 So.2d 149, 155 (Fla. 1st DCA 1994). While the Florida Supreme Court did, as Plaintiff argues, recognize the ability of estoppel to overcome the assertion of the SOF as a defense when it created the partial performance exception to the SOF *for oral real estate contracts*, see Maloy v. Boyett, 43 So. 243, 246 (Fla. 1907) (seeking specific performance of oral contract for sale of land), the Florida Supreme Court's decision in Elsberry, entered nearly four years after Maloy, is controlling precedent on breach of contract claims seeking damages at law.[3]

Plaintiff's reliance on this Court's order denying Defendant's motion to dismiss Count V under Fed. R. Civ. P. 12(b)(6) in support of its waiver and estoppel argument is likewise misplaced. Contrary to Plaintiff's assertion otherwise, see Dkt. 58 at 13, this Court did not rule that "waiver and estoppel are available under Florida law to prevent an assertion of the [SOF] in an appropriate case." Finding that the SOF issue was not ripe for decision, the Court denied Defendant's motion to dismiss, stating that "the allegations, *while not entirely clear*, do assert facts that *could* support waiver or estoppel. This issue . . . is better resolved at the summary judgment stage." Dkt. 26 at 3 (emphasis added).

---

[3] Plaintiffs seek purely legal relief in the form of damages. Part performance of a contract is a ground of relief in equity only, and there on the principle of relieving from fraud. Elsberry, 54 So. at 593. While the courts may use the doctrine of part performance to remove a contract from the SOF for the purpose of granting specific performance or other equitable relief, the doctrine is not available in an action solely for damages at law. Since Plaintiff seeks only monetary compensation for his damages, the part performance doctrine is inapplicable.

Plaintiff has failed to establish grounds for taking the alleged oral agreement out of the SOF. The Court concludes, therefore, that Florida's SOF applies in the instant case. Because the alleged oral agreement was intended to last for more than one year, the Court finds that it is barred by Fla. Stat. § 725.01. There being no genuine disputes as to any material facts in this case, the Court finds that Defendant is entitled to judgment as a matter of law on Count V of the complaint. See Fed.R.Civ. P. 56(c) (2007).

Finally, as Defendant argues in its request to file a reply to Plaintiff's response to its motion for summary judgment, Plaintiff has "fundamentally alter[ed] the allegations of its breach of contract claim" to assert that there were two related but separate agreements at issue in this case. See Dkt. 58 at 8-9 ("There are two agreements discussed by the parties in this case. The first agreement is an oral agreement that Nestle would execute a final written agreement regarding the doubles program. The second is the final written agreement regarding the doubles program, which was never executed."). Plaintiff further states that "[t]he terms of the agreement were simple and are undisputed. If for whatever reason a final transportation contract between Nestle and Specialized Transportation was not reached for the doubles program, Nestle would pay Specialized Transportation the start-up costs incurred." Dkt. 58 at 4.

In opposition to Defendant's assertion that Count V is barred by Florida's SOF, Plaintiff asserts likewise in its motion for summary judgment:

> The terms of the agreement are undisputed. See Ex. C[] ¶ 15 ("I authorized Specialized Transportation to purchase equipment and incur costs necessary to start-up the doubles program. I told Specialized Transportation that if a final contract was

> not reached, Nestle would pay those start-up costs.").
>
> It is also undisputed that Nestle breached that agreement when it: (a) *did not enter into a final contract*; (b) terminated the doubles program; and (c) refused to pay Specialized Transportation its start-up costs. . . .
>
> There is no dispute that both Adams, for Nestle, and Specialized Transportation believed that the *oral agreement* was only temporary. See Ex. A at 4; Ex. C ¶ 16. Adams stated that:
>
> Q: Now, did you know, when you made the authorization, did you understand that there would be expenses that would be incurred by Specialized in going forward with the project?
>
> A: Yes, at that time, the expenses were very moderate compared to the return that Nestle would be receiving. I was also very confident that we would be able to conclude a three-year contract with Specialized with little or no difficulty in a very timely manner.
>
> Ex. F at 12, lns. 7-14.

Dkt. 47 at 10; 12 (emphasis added).

The Court is constrained to consider the parties' motions for summary judgment in light of the allegations set forth in the complaint, which Plaintiff has not moved to amend. As demonstrated above, Plaintiff's assertion that Defendant breached an oral agreement by failing to reimburse Plaintiff for its start-up costs when negotiations failed to result in a written agreement between the parties is not referenced in the complaint, and thus is not properly before the Court. In the interests of justice, the Court will allow Plaintiff to file an amended complaint correcting this deficiency, if it so desires. Fed. R. Civ. P. 15(a)(2) & (c)(1)(B) (2007).

Given the above findings, the Court concludes that a discussion of other issues raised in the motions for summary judgment is not necessary.

It is therefore **ORDERED** and **ADJUDGED** that:

1. Defendant's Motion for Leave to File a Reply Memorandum of Law in Support of its Motion for Partial Summary Judgment (Dkt. 60) is **DENIED**.

2. Defendant's Request for Oral Argument is **DENIED** (Dkt. 59).

3. Plaintiff's Motion for Partial Summary Judgment as to Count V (Dkt. 47) is **DENIED**.

4. Defendant's Motion for Partial Summary Judgment as to Count V (Dkt. 53) is **GRANTED**.

5. Plaintiff may, within **TWENTY (20) DAYS** hereof, file an amended complaint. Defendant's response thereto shall be due within ten (10) days of service thereof.

**DONE** and **ORDERED** in Tampa, Florida on March 20, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2006\06-cv-421 MSJ 3-18.wpd