## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SPECIALIZED TRANSPORTATION
OF TAMPA BAY, INC.,
      Plaintiff

vs.

NESTLE WATERS NORTH AMERICA
INC.,
      Defendant.

_____/

Case No.: 8:06-CV-421-T30EAJ

Removed from the Circuit Court
of the 13th Judicial Circuit, in and
for Hillsborough County, Florida
Case No. 06-CA-000883

### SPECIALIZED TRANSPORTATION OF TAMPA BAY, INC.'S
### MOTION IN LIMINE TO EXCLUDE EXHIBITS 7, 17, 19, 23-34, 37-40
### AND INCORPORATED MEMORANDUM OF LAW

Specialized Transportation of Tampa Bay, Inc. ("Specialized Transportation") is entitled

to the exclusion of: (1) pre-litigation letters written to settle this dispute between Nestle Waters

North America, Inc. ("Nestle") and Specialized Transportation or its counsel; and (2) certain

documents produced on July 1, 2008 (two months before trial) well after the close of discovery,

which were wrongfully withheld.

### BACKGROUND

This is a breach of contract and open account action. As is relevant to the motion in

limine, this action concerns: (A) the failure by Nestle to make payment on certain invoices for

deliveries of bottle water made by Specialized Transportation; and (B) the failure by Nestle to

pay Specialized Transportation for its start-up costs related to a project to deliver bottled water

by pulling two tractors with one trailer.

A.    **The failure to make payment on certain invoices claim.**

In connection with the failure to make payment on certain invoices for deliveries, Nestle

has raised that it made payments on some of the invoices and that it did not make certain

payments because of Specialized Transportation's failure to produce certain information.  In

connection with its initial disclosures, Nestle disclosed that it had "copies of invoices, checks

and/or summary of payments by Defendant to Plaintiff," supporting these contentions.  Nestle's

Initial Disclosures at 2, II(c) (Exhibit A to this Motion).  In response to its Initial Disclosures,

Specialized Transportation requested from Nestle "[a]ny documents referred to in your Rule 26

initial disclosures."  Specialized Transportation's First Requests for Production at 5, Request No.

1 (Exhibit B to this Motion).  In response, Nestle indicated that "it will make available for

inspection a hard copy of the documents referenced in the initial disclosures made by Defendant

pursuant to Rule 26(a)(1)(B)."  Nestle's Response at 4, Response No. 1 (Exhibit C to this

Motion).  Similarly, Specialized Transportation requested in Request number four "[a]ny

documents relating to the reasons why Nestle has refused to pay Specialized Transportation for

the invoices at issue in this case."  Specialized Transportation's First Requests for Production at

5, Request No. 4 (Exhibit B to this Motion).  Nestle responded that it again would produce

documents responsive to this Request.  *See* Nestle's Response at 5, Response No. 4 (Exhibit C to

this Motion)

On July 1, 2008, ten months after the close of discovery, Nestle produced for the first

time to Specialized Transportation two documents that allegedly support their contentions

regarding payments made or reasons why payments were not made.  *See* Letter from Craig

Ollenschleger dated July 1, 2008 and attachments (Exhibit D to this Motion).  Despite producing

these documents after the close of discovery, Nestle has listed both of these documents on its

exhibit list as Exhibits 37 and 38. Pretrial Statement at 44 (Dkt. #89).  In addition, Nestle has listed two other summaries, which Specialized Transportation has never received (despite the above Requests), which are listed as Exhibits 39 and 40, which also apparently relate to payments made or unpaid for lacking documentation. *See id.*

**B.      The failure by Nestle to pay Specialized Transportation its start-up costs.**

Count V of the Amended Complaint concerns Nestle's failure to pay Specialized Transportation certain start-up costs for a doubles program that Specialized Transportation conducted for Nestle.  Under the program, Specialized Transportation developed, constructed, and operated a tractor trailer set-up, where one tractor pulled two trailers to locations in southern Florida.

Nestle's former Regional Distribution Manager for the Southeastern United States, Joel Adams, has stated in a sworn statement and in a declaration that he gave authorization for Specialized Transportation begin the doubles program.  He has also stated that he told Specialized Transportation that if for whatever reason a final contract was not reached, Nestle would make Specialized Transportation whole for the start up costs, which were expected to be $585,000.  Specialized Transportation's estimate of $585,000 to start up the doubles program was exceed by several hundred thousand dollars.  However, Specialized Transportation incurred those costs and began delivering Nestle's product using doubles as part of the program. Specialized Transportation delivered a written contract to Adams in June 2002.  Adams left Nestle in August 2002.  When Adams left Nestle in August 2002, Nestle's employees will testify that they continued negotiating the contract until they decided it was not beneficial and terminated the program.

As is related to this Motion, Nestle has listed as exhibits (Exhibits 17 and 19) in this action two memoranda, which are notes to a file, presumably Joel Adams's personnel file, that purport to report conversations between Ron Kane and Joel Adams and detail allegedly poor performance by Joel Adams in his job. *See* Pretrial Statement (Dkt. #89) at 42, Ex. 17 and 19. These two memoranda were not produced until July 1, 2008, ten months after the close of discovery. *See* Ex. D. Specialized Transportation requested Joel Adams's personnel file during discovery. *See* Specialized Transportation's First Requests for Production at 5, Request No. 5 (Exhibit B to this Motion). Further, on November 29, 2007, as part of attempt to avoid a discovery dispute, Defendant's counsel represented that it was producing Adams's personnel file, which neither included the two memoranda, nor gave any reason why Adams was no longer employed by Nestle. *See* Letter from Craig Ollenschleger dated November 29, 2007 (Exhibit E to this Motion).

In addition, Nestle has listed a series of letters between Paul Bowen, Specialized Transportation's counsel at the time, and Judith Steckler, a paralegal at Nestle, as Exhibits 7 and 23-34. A copy of each letter is attached as Exhibits F-R. As both Ms. Steckler's and Mr. Bowen's letters make clear the letters were part of settlement discussions to resolve the disputes that existed between the parties. According to its Pretrial Statement, Nestle intends to use Mr. Bowen's letters as admissions against Specialized Transportation. *See* Pretrial Statement (Dkt. #89) at 34, ¶2.

## DISCUSSION

**A.      This Court should exclude Exhibits 17, 19, and 37-40 because Nestle failed to produce them or produced them ten months after the close of discovery.**

Pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure and Rule 403 of the Federal Rules of Evidence, Specialized Transportation seeks the exclusion of six exhibits because of Nestle's failure to produce them prior to the close of discovery.  Rule 37(c) states that:

> If a party fails to provide information or disclose a witness as is required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence ... at a trial, unless the failure was substantially justified or harmless.

Fed. R. Civ. Proc. 37(c)(1).

The Eleventh Circuit has stated that a trial court has wide discretion to exclude evidence that is untimely provided under Rule 37(c)(1).  *See, e.g., Bearint v. Dorel Juvenile Group, Inc.*, 389 F.3d 1348-49 (11th Cir. 2004) (affirming exclusion of expert testimony that was not timely proffered even though opposing party knew of its existence prior to trial and its exclusion caused them great prejudice); *Cooley v. Great Southern Wood Preserving*, 138 Fed. Appx. 149, 160-61, 2005 WL 1163608, at *10 (11th Cir. May 18, 2005) (affirming exclusion of declarations from witnesses not identified even though summary judgment resulted from exclusion).[1]  The court will reverse this Court's exclusion of evidence only when substantial prejudice is shown.  *See, e.g., Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1259 (11th Cir. 2004); *Cooley*, 138 Fed. Appx. at 160-61, 2005 WL 1163608, at *9.

---

[1] *See also Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 843-44 (9th Cir. 1976) (affirming exclusion of late produced documents); *Parrish v. Freightliner, LLC*, 471 F. Supp. 2d 1262, 1269-70 (M.D. Fla. 2006) (striking expert testimony when plaintiff failed to supplement its interrogatories with new theory of liabiilty).

Similarly, Rule 403 of the Federal Rules of Evidence provides that probative evidence can be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403.

Here, Nestle failed to produce Exhibits 17, 19, and 37-40 during discovery.  Indeed, two of the exhibits, Exhibits 39 and 40, still have not been produced despite a request more than a year ago that was not objected to by Nestle.  The other four exhibits (17, 19, and 37-38) were produced just over a month ago, on July 1, 2008, ten months after the close of discovery and two months before the trial term for this case.  Reviewing the four exhibits that Nestle actually has produce, it is clear that each document existed at the time of requests (two of the documents bear dates from 2002) and should have been timely produced or produced in a supplemental production well before the close of discovery.

While each Exhibit undoubtedly has some probative value, none of the documents is case critical.  Nestle is still free to have Ron Kane, Adams's supervisor, or someone testify that Adams's was terminated.  Likewise, Nestle is still free to have someone testify what payments were made and why payments were not made.  All that is sought is the exclusion of these six documents that buttress that testimony, which Specialized Transportation was unable to conduct any discovery on and has been substantially prejudiced.  Nestle's failure in a timely manner to supplement its production and the unfair prejudice that failure has caused justifies this Court's exclusion of Exhibits 17, 19, and 37-40 from use at trial pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure and Rule 403 of the Federal Rules of Evidence.

**B.     This Court should exclude the pre-suit settlement communications between Paul Bowen and Judith Steckler, Exhibits 7 and 23-34, along with any testimony relating to those communications.**

Pursuant to Rule 408 of the Federal Rules of Evidence, this Court should exclude Exhibits 7, 23-34 and any testimony relating to them from the trial of this matter because they were part of settlement discussions between the parties. Rule 408 of the Federal Rules of Evidence makes inadmissible "conduct or statements made in compromise negotiations regarding the claim" when offered by any party to prove the invalidity of a claim or to impeach by prior inconsistent statement or contradiction. *See* Fed. R. Evid. 408(a). The Eleventh Circuit has stated that the test whether Rule 408 applies is "'whether the statements or conduct were intended to be part of the negotiations toward compromise.'" *See Blu-J, Inc. v. Kemper C.P.A. Group*, 916 F.2d 637, 642 (11th Cir. 1990) (quoting *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1106 (5th Cir. 1981)). Indeed, the Eleventh Circuit has held that reports of experts and independent evaluations by third-parties were within Rule 408, even if no monetary offer was ever made. *See id.* at 642. As to using statements made in compromise negotiations for impeachment purposes, the notes to the most recent amendments of Rule 408 in 2006 make clear that this Court should not allow such a use. The notes state that:

> The amendment prohibits the use of the statements made in settlement negotiations when offered to impeach by prior inconsistent statements or through contradiction. Such broad impeachment would tend to swallow the exclusionary rule and would impair the public policy promoting settlements.

Likewise, the notes to the 2006 amendments of Rule 408 also makes clear that a party cannot seek to utilize its own settlement communications at trial. The notes state that:

> The amendment makes clear that Rule 408 excludes compromise evidence even when a party seeks to admit its own settlement offer or statement made in settlement negotiations. If a party were to reveal its own statement or offer, this could itself reveal the fact

7

> that the adversary entered into settlement negotiations. The
> protections of Rule 408 cannot be waived unilaterally because the
> Rule, by definition, protects both parties from having the fact of
> negotiation disclosed to the jury.

Exhibits 23 through 34 are a series of letters written between Paul Bowen, then counsel

for Specialized Transportation, and Judith Steckler, at the time a paralegal for Nestle. *See* Exs.

F-Q. Exhibit 7 is a response prepared by Specialized Transportation that was forwarded by

Bowen to Judith Steckler as part of the negotiations contained in Exhibits 23-34. As can be

quickly gleaned from Ms. Steckler's letters, almost every letter indicates that the letters were

"For Settlement Purposes" or were a part of an attempt to compromise and resolve the parties'

claims. *See* Exs. H, K, M, N, O ("I urge you … to continue our efforts to resolve this matter.").

Likewise, Mr. Bowen indicates in his letters that Specialized Transportation was trying to

"resolve" amicably the dispute between the parties. *See* Exs. J, L, P. The test under *Blu-J* is

clearly met.

Further, Nestle's use of these documents is clearly within the prohibition contained in

Rule 408. Nestle wishes to utilize these settlement communications for two purposes: (1) to

prove the invalidity of Specialized Transportation's claims; and (2) with respect to Count V, to

impeach Specialized Transportation either under a theory of inconsistent statements or

contradiction. More specifically with respect to Count V, Nestle wants to utilize Mr. Bowen's

letters to show that Specialized Transportation at the outset of the dispute between the parties did

not present Nestle with a theory that Adams promised to pay Nestle its start-up costs if a final

contract was not reached for the doubles program. Instead, Mr. Bowen's position on behalf of

Specialized Transportation was that a three year contract existed because of statements made by

Adams later regarding the doubles program. From the Pretrial Statement, it is clear that Nestle

intends to utilize these statements as admissions. *See* Pretrial Statement (Dkt. #89) at 34, ¶2.

The use of statements made during settlement negotiations to impeach is not permissible under

Rule 408.  Likewise, it is not appropriate under Rule 408 for Nestle to proffer either its letters or

Bowen's letters to try and show that Specialized Transportation's claims are not valid.

Accordingly, pursuant to Rule 408, this Court should exclude Exs. 7 and 23-34 as well as any

testimony regarding the settlement discussions between the parties.

## CONCLUSION

For the foregoing reasons, Specialized Transportation requests that this Court exclude

Exhibits 7, 17, 19, 23-34, and 37-40 as well as any testimony relating to any settlement

communications between Nestle and Specialized Transportation.

Dated: August 13, 2008

HOLLAND & KNIGHT LLP
P.O. Box 1288 (ZIP 33601-1288)
100 North Tampa Street, Suite 4100
Tampa, Florida 33602
(813) 227-8500 • (813) 229-0134 Fax
john.guard@hklaw.com
Attorneys for Plaintiff,


s/ John M. Guard
John M. Guard
Florida Bar No.  374600

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

I hereby certify that I provided a draft of this motion to opposing counsel by e-mail and

Nestle's local counsel indicated that Nestle did not consent to the relief sought by this Motion.

s/ John M. Guard
John M. Guard

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 13, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Lannie D. Hough, Jr., Esq.
Carlton Fields, P.A.
4221 W. Boy Scout Boulevard, 10th Floor
Tampa, FL  33607
(813) 229-4333 • (813) 229-4133 (fax)
lhough@carltonfields.com
Counsel for Defendant

Jeffrey M. Garrod, Esq.
Orloff, Lowenbach, Stifelman & Siegel, P.A.
101 Eisenhower Parkway
Roseland, NJ 07068
973-622-6200 • 973-622-3073 (fax)
JMG@olss.com
Of Counsel for Defendant

David Lewis Levy, Esq.
Law Office of David Lewis Levy
10225 Ulmerton Road, Suite 8A
Largo, Florida 33771-3526
(727) 581-8787 • (727) 581-0076 (fax)
levylawoffice@aol.com
Co-Counsel for Plaintiff

s/ John M. Guard
John M. Guard

# 5535072_v1