UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SPECIALIZED TRANSPORTATION OF TAMPA
BAY, INC.,

        Plaintiff,

v.                              Case No. 8:06-cv-421-T-33EAJ

NESTLE WATERS NORTH AMERICA, INC.,

        Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Plaintiff Specialized Transportation of Tampa Bay, Inc.'s Motion in Limine to Exclude Exhibits 7, 17, 19, 23-34, 37-40 (Doc. # 95), which was filed on August 13, 2008. Defendant Nestle Waters North America, Inc. filed its response on August 18, 2008. For the reasons that follow, this Court **GRANTS** Plaintiff's Motion in Limine.

Federal Rule of Evidence 408

Plaintiff's motion seeks an order excluding from evidence two categories of documents: untimely produced documents (Defendant's exhibits 17, 19, and 37-40) and documents allegedly related to settlement negotiations (Defendant's exhibits 7, and 23-34). Defendant indicates that it "elected to withdraw" exhibits 17, 19, and 37-40, the documents Plaintiff characterizes as untimely produced. Therefore, the only dispute before this Court is whether exhibits 7, and 23-34 should be excluded under Federal Rule of Evidence 408 as part of settlement negotiations.

>Federal Rule of Evidence 408 provides:
>
>(a) Prohibited uses. Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>(1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>(2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.
>
>(b) Permitted uses. This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

Fed.R.Evid. 408.

The Advisory Committee's Notes explain that the primary purpose of the rule is the promotion of the public policy favoring the compromise and settlement of disputes. The Eleventh Circuit provides that "the test for whether statements fall under this rule is 'whether the statements or conduct were intended to be a part of the negotiations toward compromise.'" Blu-J, Inc. v. Kemper C.P.A. Group, 916 F.2d 637, 642 (11th Cir. 1990)(citing Ramada Dev. Co. v. Rauch, 644 F.2d 1097, 1107 (5th Cir. 1981)).

This Court has conducted independent research on the application of Rule 408 of the Federal Rules of Evidence. Courts uniformly exclude evidence created for the purpose of facilitating

settlement negotiations. For instance, in Blu-J, the evidence subject to exclusion under Rule 408 was an accountant's report "prepared by mutual agreement of the parties as a part of their settlement negotiations." Blu-J, 916 F.2d at 641. Similarly, in Ramada, the evidence subject to exclusion under Rule 408 was an architect's report prepared to facilitate settlement: "The report was to identify arguable defects that could then be discussed in monetary terms in the negotiations." Ramada, 644 F.2d at 1107.

In addition to excluding evidence created for the purpose of facilitating on-going settlement negotiations, it is also appropriate and contemplated by the Rule that courts exclude evidence which clearly communicates an offer to settle a claim. Some attorneys mark such communications as "confidential settlement communications." See College Park Holdings v. Racetrac Petroleum, 239 F. Supp. 2d 1334, 1343 (N.D. Ga. 2002)("Here, the series of letters exchanged between [the parties] were intended to be a part of the negotiations toward compromise. The exchange began on May 21, 2002 in a letter from Racetrac clearly marked as a 'Settlement Communication.' Each of CPH's responses was marked 'Confidential Offer to Compromise -- Inadmissible Under F.R.E. 408.'") (internal citations omitted).

While an attorney's label on a document may not always afford the protection that the attorney seeks to garner for such document, marking an document as a "Confidential Offer to Compromise" helps

courts decide whether a document is "intended to be a part of the negotiations toward compromise." Blu-J, 916 F.2d at 642.

In the present case, a number of the documents are marked "FOR SETTLEMENT PURPOSES ONLY" (Doc. # 95, Ex. K, L, M, N). The documents Specialized Transportation seeks to exclude are pre-suit communications between counsel for Nestle and counsel for Specialized Transportation. The letters communicate the parties' attempts to reach a settlement before the initiation of suit.

Exhibit J is a September 25, 2003, letter from Specialized Transportation's counsel to Nestle's counsel, which states, among other things: "My client would like to resolve this issue as soon as possible. If it cannot be amicably resolved, my client has instructed me to institute suit as soon as possible." (Doc. # 95 at Ex. J). Exhibit K, a September 30, 2003, letter from Nestle's counsel to Specialized Transportation's counsel responds, "While we would like to continue our efforts to resolve this matter amicably, we need some more time to continue our review . . . ." (Doc. # 95 at Ex. K). Exhibit L is an October 1, 2003, letter from Specialized Transportation's counsel to Nestle's counsel stating among other things that, "It would be best for both parties to come to an agreeable resolution." (Doc. # 95 at Ex. L). Exhibit M is an October 8, 2003, letter from Nestle's counsel to Specialized Transportation's counsel addressing Specialized Transportation's demands and is clearly marked "FOR SETTLEMENT PURPOSES ONLY." The

letter closes: "[Nestle] remains interested in resolving this matter amicably and is ready to pay those invoices for which it receives supporting documentation from Specialized Transport." (Doc. # 95 at Ex. M). Exhibit N similarly contains references to Nestle's desire to pay invoices to settle the matters. (Doc. # 95 at N).   In Exhibit O, Nestle's counsel "urges" Specialized Transportation's counsel to continue efforts to resolve the matter. (Doc. # 95 at Ex. O).  In Exhibit P, Specialized Transportation's counsel begins the letter stating, "[M]y client is making one more attempt to resolve this dispute" and closes the letter with the remark, "My client is interested in finalizing this matter and being paid before the end of the year." (Doc. # 95 at Ex. P). The chain of communications contains other letters, and each is related to pre-suit communications in an effort to settle prior to Specialized Transportation filing suit.

Defendant Nestle argues against exclusion and maintains that, "Specialized's attorney never communicated an offer to compromise, but rather conveyed repeated, uncompromising demands for payment under the direct threat of litigation if those demands were not immediately satisfied." (Doc. # 104 at 18).   Nestle cites <u>Winchester Packaging, Inc. v. Mobile Chemical Co.</u>, 14 F.3d 316, 320 (7th Cir. 1994), for the proposition that "a bill is not a

settlement offer, and it does not become one merely because the billing party threatens suit if the bill isn't paid.").[1]

In this case, the letters in question are not simple dunning letters. The letters Specialized Transportation seeks to exclude constitute settlement negotiations, and they fall directly under the protection of Rule 408. Plaintiff asserts that Nestle intends to utilize these statements as admissions, for impeachment, and to prove Specialized Transportation's claim is not valid. (Doc. # 95 at 9). The Court agrees that Rule 408 precludes Nestle from doing so in this case.

This Court must balance Nestle's desire to present evidence of Specialized Transportation's prior negotiations in this case against the need in every case to promote free flowing settlement negotiations. Generally, an attorney should feel safe in preparing letters and other documents prior to the initiation of a lawsuit in an effort to reach an expedient settlement for the client without the fear of seeing such letters used as evidence against the client, particularly as an admission, if a settlement is not reached.

---

[1] <u>Winchester Packaging, Inc.</u>, decided by Judge Posner, further states: "Two senses of 'settlement' must be kept distinct. To settle a bill is to pay it. But a bill that itemizes what the sender thinks the recipient owes him and demands it - even under threat of legal action - is not an offer in settlement or a document in settlement negotiations and hence is not excluded by force of Rule 408. . . . Dunning a deadbeat by threatening to sue is not the same thing as making an offer or demand in the context of a settlement." 14 F.3d at 320.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED** that:

(1) Plaintiff Specialized Transportation of Tampa Bay, Inc.'s Motion in Limine to Exclude Exhibits 7, 17, 19, 23-34, 37-40 (Doc. # 95) is **GRANTED** to the extent that Exhibits 7 and 23-34 are excluded under Federal Rule of Evidence 408.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>28th</u> day of August, 2007.

                                          _____
                                          VIRGINIA M. HERNANDEZ COVINGTON
                                          UNITED STATES DISTRICT JUDGE

Copies:
All Counsel of Record