UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SPECIALIZED TRANSPORTATION OF TAMPA
BAY, INC.,

                    Plaintiff,

v.                                    Case No.  8:06-cv-421-T-33EAJ

NESTLE WATERS NORTH AMERICA, INC.,

                    Defendant.
_____/

## ORDER

This cause comes before the Court pursuant to Defendant Nestle
Waters North America Inc.'s Motion in Limine to Bar Specialized
Transportation from Presenting at Trial the New Factual Contention
that the Oral Agreement Pled in Count V of the Amended Complaint
Contains a Liquidated Damages Provision (Doc. # 102), which was
filed on August 18, 2008.  Plaintiff Specialized Transportation of
Tampa Bay, Inc., filed a Response in Opposition to the motion in
limine on August 19, 2008 (Doc. # 105), and Nestle filed a Reply
memorandum to Specialized's Response (Doc. # 126) on September 2,
2008.  For the reasons that follow, Nestle's motion in limine is
denied.

## I.  Background

Specialized initiated this action against Nestle in State
Court on January 31, 2006, and it was removed by Nestle to this
Court on March 13, 2006. (Doc. ## 1,2).  Nestle moved to dismiss
Count V of the complaint on March 20, 2006, on the basis of the
operation of the Statute of Frauds, Florida Statute Section 725.01

(Doc. # 4), and this Court denied the motion on November 3, 2006.
(Doc. # 26).   Thereafter, on  October 18, 2007, the parties filed
cross motions for summary judgment on Count V of the Complaint.
(Doc. # 47, 53).   On March 20, 2008, this Court thoroughly
evaluated Count V of the Complaint, and granted Nestle's motion for
summary judgment on Count V of the Complaint; however, the Court
allowed Specialized to file an amended complaint to correct
deficiencies in the Complaint. (Doc. # 66).

On April 4, 2008, Specialized filed its Amended Complaint.
Counts I, III, IV, and V are for breach of contract, and Count II
is for open account. (Doc. # 68).   As Stated in the parties' Joint
Final Pretrial Statement, Specialized seeks $585,000 on Count V,
$21,927 on Counts I and II, $8,000 on Count III, and $4,275 on
Count IV.  (Doc. # 89 at 11).[1]  Count V of the Amended Complaint is
the subject of this motion, and this Court recites Count V in its
entirety below:

> This is an action for breach of contract.  Plaintiff re-
> alleges the allegations contained in paragraphs 1-3.
> Plaintiff was in the business of providing transportation
> services for consideration by shipping in its own
> trailers pulled by tractors driven by agents and
> independent contractors under contract with Plaintiff.
> In December 2001, Defendant sent a request for proposal
> to Plaintiff and other transportation companies

---

[1]  These figures differ slightly from the amounts specified in
the Amended Complaint.  For instance, the Amended Complaint states
that Plaintiff seeks $4,725 as to Count IV, and the Joint Pretrial
Statement indicates that Plaintiff seeks $4,275. (Doc. ## 68 at 4;
89 at 11).  The Amended Complaint does not indicate any specific
amount of damages as to Count V.

requesting proposals to reduce Defendant's transportation costs for delivering bottled water.   In January 2002, Plaintiff responded to the request for proposal with several proposals, which were made in writing and received by Joel Adams, Nestle's Regional Distribution Manager.   One of the proposals made by Plaintiff was a project that allowed a single tractor [to] pull twin 48-foot trailers (the "doubles proposal").   After receiving Plaintiff's proposals, Adams, on behalf of Nestle, began talking and meeting with Plaintiff regarding the doubles proposal.   As a part of these additional talks and meetings, Adams conducted: (a) a financial analysis of the cost factors for utilizing twin trailers to deliver Defendant's product; and (b) a survey of customer's acceptance of such a program; and (c) an investigation of Plaintiff's safety record.   After concluding that the program would reduce Nestle's transportation costs, the parties jointly developed a price per trip and analyzed the start-up costs associated with the doubles proposal. At that time, Plaintiff was requested by Defendant to develop a prototype whereby two (2) trailers could be pulled by one tractor.   Adams, on behalf of Defendant, inspected the prototype, took digital photographs of the prototype, and authored a powerpoint presentation that was presented to other management personnel of Defendant. Around the time that Defendant inspected the prototype, Defendant, again through Adams, was provided with Plaintiff's projected start-up costs for the project. Defendant, through Adams, reviewed and approved the start-up costs and authorized Plaintiff to begin delivering Defendant's product utilizing doubles.   As part of the parties' agreement and as a material inducement to Plaintiff to expend the money necessary to be able to deliver Defendant's product utilizing doubles, Defendant, through Adams, **agreed that if a final contract was not reached between the parties regarding the doubles proposal, Defendant would pay Plaintiff the start-up costs it expended.**   At the time of the agreement, both Defendant, through Adams, and Plaintiff believed that a final contract would be quickly entered into because of the savings to Defendant that the doubles proposal provided.   The parties also believed that the final contract would occur quickly because the parties had also already agreed on many of the material terms of the final contract, including its duration.   After reaching this agreement with Defendant, Plaintiff incurred start-up costs and expenses in excess of the projected start-up costs that it provided to Defendant in purchasing and

> converting tractors, trailers, and dollies for use under
> the doubles proposal.  Plaintiff also prepared a written
> draft of the final contract and submitted that document
> to Defendant for approval.  Adams continued to negotiate
> the final contract until he left Defendant's employ in
> August 2002.  After Adams left, Defendant continued
> negotiating the agreement and also expanded the number of
> locations that Plaintiff utilized doubles to deliver
> Defendant's products.  No final agreement was ever
> reached and Defendant terminated Plaintiff from
> delivering its products.  Thereafter, Defendant breached
> its agreement with Plaintiff by failing to pay
> Plaintiff's start-up costs.  As a result of the breach,
> Plaintiff was damaged.

(Doc. # 68 at 4-7)(emphasis added).

The parties filed cross motions for summary judgment on Count

V of the Amended Complaint. (Doc. ## 73, 74).  This Court denied

the cross motions for summary judgment on June 11, 2008.

Particularly relevant to the disposition of the present motion in

limine, the Court noted in its Order denying the cross motions for

summary judgment:

> While it is clear that Adams intended to bind Nestle to
> a reimbursement of "start-up costs," it is unclear that
> Adams intended to bind Nestle to a payment of the full
> $585,000 figure.  Specifically, Nestle argues that any
> reasonable damages figure would include an offset for the
> value of the shipping equipment Specialized intends to
> keep, and that therefore, Adams's statement acknowledging
> that Specialized Transportation spent $585,000 in "start-
> up costs" should not be construed as an agreement to a
> liquidated damages provision of the same amount. (Doc. #
> 76).  Indeed, Adams stated in deposition that he intended
> to obligate Nestle to "make Specialized whole" with
> regards to the start-up costs in connection with the
> "doubles" program. (Doc. # 73, Ex. E).  To construe the
> $585,000 figure as a liquidated damages provision would
> not make Specialized Transportation "whole," as Adams
> says was his intention, but would instead overcompensate
> the Plaintiff, affording it an undeserved windfall.
> Because there is a factual dispute over whether Adams and

-4-

> Specialized Transportation reached a "meeting of the minds" as to the material terms of their alleged oral contract, and because a reasonable jury could find for either party, summary judgment is not appropriate in this case.

(Doc. # 78 at 10-11).

By its present motion in limine, Nestle, once again, is seeking judgment in its favor on Count V of the Amended Complaint. Nestle asserts first that Specialized's claim for liquidated damages in Count V is a "never-before asserted or disclosed factual contention" and thus, Specialized should be barred from presenting evidence relating to the claimed $585,000 liquidated damages provision.  Specifically, Nestle argues, "The assertion that the oral agreement pled in Count V of the amended complaint contains a liquidated damages provision is a brand new factual contention that was not raised by Specialized until the penultimate moment of this law suit: one day before the August 5, 2008 Pretrial Conference before Judge Moody." (Doc. # 102 at 2).  Nestle further asserts, "The contention that Specialized's alleged oral agreement had a liquidated damages provision was never stated in any pleading in this case." (Doc. # 102 at 2).

In addition to claiming surprise as to the liquidated damages sought by Specialized, Nestle asserts that Specialized is not entitled to liquidated damages as to Count V as a matter of Florida law.  The Court will address these arguments in due course.

II. **Analysis**

Nestle's argument that Specialized's request for liquidated damages in the amount of $585,000 is "brand new" and "never-before asserted" is without merit.

Clearly, the issue of liquidated damages was on the table when this Court issued its June 11, 2008, order denying the cross motions for summary judgment (Doc. # 78), as the Court specifically commented on Specialized's request for liquidated damages. Further, in its motion for summary judgment filed on May 1, 2008, Specialized argued that "the agreement to pay start-up costs is a liquidated damages provision." (Doc. # 73 at 15). In its summary judgment motion, Specialized thoroughly explained its position on its claim for liquidated damages. (Doc. # 73 at 14-18). Among other arguments, Specialized asserted in its motion for summary judgment:

> Under common law, mitigation of damages is not a viable defense to a contract that liquidates damages for its breach. See e.g., Ross v. Garner Printing Co., 285 F.3d 1106, 1113-14 (8th Cir. 2002). . . While there is no case under Florida law holding so explicitly, Florida law clearly recognizes parties to a contract may stipulate in advance to an amount to be paid as liquidated damages in the vent of a breach. See e.g., Lefemine v. Baron, 573 So.2d 326, 328 (Fla. 1991). Florida law also recognizes that if a valid liquidated damages provision exists, then a plaintiff, like Specialized Transportation, need not prove "sustainment of any actual loss or damage by reason of Defendant's breach." Smith v. Newell, 20 So. 249, 251 (Fla. 1896); also Bender Shipbuilding & Repair Co. v. Brasileiro, 874 F.2d 1551, 1557 n.5 (11th Cir. 1989).

(Doc. # 73 at 14).

In addition, Specialized asserted that "the agreement to pay Specialized Transportation's start-up costs is a liquidated damages provision" and "under Florida law, a liquidated damage provision need not state a specific amount payable as liquidated damages to be enforceable." (Doc. # 73 at 15)(citing RKR Motors, Inc. v. Associated Uniform Rental & Linen Supply, Inc., 2006 Fla. App. LEXIS 17643, 31 Fla. L. Weekly D 2646 (Fla. 3d DCA Oct. 25, 2006); Action Orthopedics, Inc. v. Techmedia, Inc., 759 F. Supp. 1566, 1569 (M.D. Fla. 1991)).   Specialized also asserted a number of arguments in support of the enforceability of the liquidated damages provision of the oral contract. (Doc. # 73 at 16).

Specialized advances identical arguments in response to Nestle's present motion in limine.  This Court is not inclined to revisit summary judgment on the eve of trial in response to "motions in limine" that are actually dispositive motions filed well-past the deadline and on issues that have been fully litigated.  This Court rests on its June 11, 2008, finding that "[w]hile it is clear that Adams intended to bind Nestle to a reimbursement of 'start-up costs,' it is unclear that Adams intended to bind Nestle to a payment of the full $585,000 figure. . . . Because there is a factual dispute over whether Adams and Specialized Transportation reached a 'meeting of the minds' as to the material terms of their alleged oral contract, and because a

reasonable jury could find for either party, summary judgment is not appropriate in this case." (Doc. # 78 at 10-11).

After full briefing on the issue during the second round of summary judgment motions, this Court determined that a jury should be the entity to decide whether Nestle and Specialized reached an oral agreement and if, so the terms of the agreement.  There is no reason to take this issue away from the jury at this point in the proceedings.  As it did on June 11, 2008, this Court determines that a jury should decide the matter of whether Nestle agreed to pay Specialized $585,000 in liquidated damages.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED** that:

Defendant Nestle Waters North America Inc.'s Motion in Limine to Bar Specialized Transportation from Presenting at Trial the New Factual Contention that the Oral Agreement Pled in Count V of the Amended Complaint Contains a Liquidated Damages Provision (Doc. # 102) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>5th</u> day of September, 2008.

<u>Virginia M. Hernandez Covington</u>
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record